_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JAN 4 2021

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.

ALLEN CHAPMAN

Case No. WMN-96-458

*Honorable George L. Russsell, III*

_____/

## Defendant's Motion for Reduction of Sentence and Release from Prison Under 18 U.S.C. §3582(c)(1)(A)(i)

Alan Chapman, *Pro Se*, motions this Court for reduction of sentence and compassionate release from incarceration pursuant to 18 U.S.C. §3582(c)(1)(A)(i) and the *First Step Act* of 2018, section 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. §3582(c)(l)(A)). Specifically, Mr. Chapman is seeking relief from judgment on three grounds: (1) rehabilitation; (2) new changes in the law; and (3) disparity in sentencing, and, as cause, states:

**Jurisdiction**

Section 603(b) of the *First Step Act* amends § 3582(c)(l)(A) by giving district courts jurisdiction to modify a term of imprisonment for compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

is earlier" (emphasis added).[1] *See United States v. Gross*, No. 2:04-cr-32-RMP, 2019 U.S. Dist. LEXIS 97933, at *5 (E.D. Wash. June 11, 2019).

Mr. Chapman submitted a notice and request to the Warden of his institution for Compassionate Release on October 11, 2020. (*Exhibit* 1). That request was denied on November 17, 2020. *Id.* There has been a lapse of **30 days** from the Warden's receipt of Mr. Chapman' request for Compassionate Release, thus giving this court jurisdiction under 18 U.S.C. §3582(c)(1)(A) to reduce Chapman's sentence and release him from prison.

**Chapman's Conviction and Sentence**

Mr. Chapman is currently serving a Life sentence at USP Canaan, Waymart, Pennsylvania.

On December 11, 1996, a federal grand jury for the District of Maryland, sitting in Baltimore, indicted Mr. Chapman for his involvement as a member of a drug distribution and racketeering enterprise operating in East Baltimore from 1989 until 1996. As a result of ongoing investigations, Mr. Chapman and seventeen co-defendants were charged in a 10-count fourth superseding indictment, on May 14, 1997 (Doc. 195). Mr. Alan Chapman was

---

[1] As amended, the relevant part of 18 U.S.C. § 3582(c) now reads:
**(c) Modification of an Imposed Term of Imprisonment** – The court may not modify a term of imprisonment once it has been imposed except that—
**(1)** in any case—
    (A) the court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
        (i) extraordinary and compelling reasons warrant such a reduction...

2

charged as follows: **Count One** – Conspiracy to Commit Murder and Kidnap in Aid of Racketeering, in violation of 18 U.S.C. §1959(a)(5); **Count Two** – Murder in Aid of Racketeering, in violation of 18 U.S.C. §1959(a)(1); **Count Three** – Attempted Murder in Aid of Racketeering, in violation of 18 U.S.C. §1959(a)(5); and **Count Six** – Conspiracy to Distribute Heroin and Cocaine, in violation of 21 U.S.C. §841(a) and 846.

Trial began in earnest on October 8, 1997, and lasted until mid-December. The evidence presented at trial indicated that Anthony Jones was the leader of a drug organization operating out of East Baltimore. A competing organization run by Mr. Elway Williams, of which Mr. Chapman was affiliated, became entangled in a street war after the killing of DeShane Carter, an associate of Mr. Jones. A jury returned a guilty verdict on all four counts against Mr. Chapman (Doc. 614), and on April 20, 1998, Mr. Chapman was sentenced to two concurrent life terms on Counts 2 & 6, and two 120-month sentences on Counts 1 & 3, both to run concurrently with the Counts 2 & 6.

A timely notice of appeal was filed, and on September 18, 2001, the Fourth Circuit Court of Appeals, *affirmed* Mr. Chapman's conviction and sentence, by unpublished opinion. *United States v. Jett*, 18 Fed. Appx. 224 (4th Cir. 2001). A petition for certiorari review was similarly denied by the U.S. Supreme Court on March 20, 2002. Later, on March 24, 2003, Mr. Chapman filed a motion for relief from judgment under 28 U.S.C. §2255. That motion was denied by Memorandum Opinion, on May 10, 2004.

## MEMORANDUM OF LAW

### Introduction

Under the *First Step Act*, Congress amended § 3582(c) to increase the use of compassionate release for inmates. This intent is explicit in the title of the amendment: "Increasing the Use and Transparency of Compassionate Release." Pub. L. No. 115-391, 132 Stat. 5194, at *5239. This is further implied by the fact that the amendment allows the inmate to directly motion the sentencing court if the application is not acted upon in 30 days, at that point giving district courts original jurisdiction.

Section 3582(c)(A)(i) states that a reduction of sentence may be given upon a finding of "extraordinary and compelling reasons," *id.*, and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. §1B1.13(2). Section 1B1.13, Application Note 1, defines "extraordinary and compelling reasons" for the purposes of § 3582(c)(A)(i).[2] At note 3, the provision directs that *extraordinary and compelling* reasons may exist if **rehabilitation** is coupled with some other compelling reason, and "not, by itself," alone. §1B1.13(c)(A)(iii). *Cf. United States v. Brown*, No. 4:05-cr-00227-1, 2020 U.S. Dist. LEXIS 87133, at *12 (S.D. Iowa Apr. 29, 2020) ("[A]lthough 'rehabilitation . . . is not, *by itself*, an extraordinary and compelling reason,' its mention by the Commission and Congress indicate rehabilitation may be considered with other factors").

An instructive district court case applying compassionate release for extraordinary and compelling reasons as defined under U.S.S.G. §1B1.13, Application Note 1, is *United*

---

[2] The relevant part of the Sentencing Guideline's §1B1.13, Application Note 1 reads:
1. <u>Extraordinary and Compelling Reasons</u> ... extraordinary and compelling reasons exist under any of the circumstances set forth below:

...

3. <u>Rehabilitation of the Defendant</u>. Pursuant to 28 U.S.C. §994(t), rehabilitation of the defendant **is not, by itself**, an extraordinary and compelling reason for purposes of this policy.

4

*States v. Cantu-Rivera*, Cr. No. H-89-204, 2019 U.S. Dist. LEXIS 105271 (S.D. Tex. June 24, 2019). That case involved a defendant convicted of various drug convictions, and sentenced in 1990 to concurrent mandatory life sentences based on sentencing enhancements for past drug convictions. *Id.* at 1.

In *Cantu-Rivera*, the court found that Mr. Cantu-Rivera met the age-related definition of "extraordinary and compelling" circumstances in U.S.S.G.§ 1B1.13, Application Note 1 (B)) because he was 69 years old and was experiencing serious deterioration in physical health because of the aging process. *Id.* at 3. In addition, "extraordinary and compelling reasons" were found under the more general provision of USSG § 1B1.13, Application Note 1(D), which allows the court to determine extraordinary and compelling reasons for "other" reasons.[3] *Cantu-Rivera* found substantial evidence showing rehabilitation during incarceration, *citing Pepper v. United States*, 562 U.S. 476, 490-91 (2011) ("evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing"). *Id.* at n2. Secondly, that court noted that the *First Step Act* eliminated life imprisonment solely on prior drug convictions. *Cantu-Rivera* thus found extraordinary and compelling reasons in the combination of these factors and reduced Mr. Cantu-Rivera's sentence to time served. *Id.* at 3-4.

---

[3] The current U.S.S.G. § 1B1.1 Application Note.1 (D) gives this power to the Director of the Bureau of Prisons. However, the *First Step Act* has given the district courts the power to enforce § 3582(c)(1)(A)(i) and thus the authority to make the determination of "other" extraordinary and compelling reasons. As *Cantu-Rivera* notes on this issue: "Because the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *Id.* n.1 (citing *United States v. Conrado Cantu*, No. 1:05-CR-458-1, Order at 6-11 (S.D. Tex. June 17, 2019)).

5

In *Brown*, supra, the Court made clear that "[c]ompassionate release provides a path for defendants with 'extraordinary and compelling reasons' to leave prison early." 2020 U.S. Dist. LEXIS 87133, at *11. In granting relief, the Court noted Congress "never defined what constitutes 'extraordinary and compelling' reasons," and so the *First Step Act* leaves that determination to the court in "the absence of an applicable policy statement." *Id.* at 11, 13; *see also United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (treating "the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts"); *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (citing cases).

Recently, a district court in Connecticut granted relief to a defendant under facts closely analogous to those presented here, though not identical. *See United States v. Jones*, No. 3:99-cr-264-6 (VAB), 2019 U.S. Dist. LEXIS 173430 (D. Conn. Oct. 7, 2019). In *Jones*, the defendant moved for relief under the First Step Act, having previously been sentenced to three concurrent life terms for drug conspiracy, RICO violations, and §924(c) offenses, including carrying a firearm during a conspiracy to commit murder and attempted murder. *Id.* at *6-8. After first finding that the defendant was eligible for relief under the *First Step Act*, the Court noted that "[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the" Act. *Id.* at *24. *See also United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019) (same).

In opposing the motion, the Government argued that the defendant was ineligible for relief because (1) Mr. Jones' drug conspiracy conviction involved not only crack cocaine, but also a quantity of heroin that independently triggered the statutory scheme under 21

6

U.S.C. §841(b)(1)(A), which provides for a maximum penalty of 10 years to Life; and (2) Mr. Jones was also convicted of RICO violations, the statutory penalties for which remain unchanged by the *First Step Act*, and thus Mr. Jones' sentences on those counts remain Life imprisonment. *Jones*, 2019 U.S. Dist. LEXIS 173430, at *25-26. The district court disagreed.

The court first eschewed any suggestion that Mr. Jones was not sentenced to a now covered offense, finding that Mr. Jones' conviction for crack cocaine was premised, at least in part, for his violation of §841(b)(1)(A). *Id.* at *28. Second, the court noted that while it need not reach the issue of whether the First Step Act authorizes a "plenary re-sentencing," it found significant that "'the First Step Act does not impose any artificial or guideline limits on a reviewing court.'" *Id.* at *30. Viewed this way, the court found that the RICO convictions and sentences, as well as the §924(c) offense, were driven by the drug conviction conduct, and thus all were addressed together "as part of a single sentencing package" and inextricably related. *Id.* at *38. Accordingly, the court reduced Mr. Jones' three concurrent life sentences to time served. *Accord United States v. Mazzini*, 2020 U.S. Dist. LEXIS 84265 (D.N.M. May 13, 2020); *United States v. Biggs*, 2019 U.S. Dist. LEXIS 81509 (N.D. Ill. May 15, 2019).

While *Jones* was a case dealing with a covered offense, not applicable here, the precedent of granting relief under the *First Step Act* on grounds of not only rehabilitation, but also for new changes in law, could not be more clear. *See United States v. Veney*, No. JKB-06-062, ECF No. 33, Gov't Resp. at 7 & n.6 (acknowledging that the First Step Act "places no limitations on what a court may consider in resentencing a First Step Act-eligible defendant," including post-sentencing conduct (citation omitted)).

7

**Rehabilitation**

A reduced sentence is warranted in this case because Mr. Chapman has made productive use of his time while in custody. *See Pepper v. United States*, 562 U.S. 476, 492-93 (2011) (explaining that, where a case is before the district court for re-sentencing, the court should consider evidence of the defendant's post-offense rehabilitation). Since his arrest and confinement, Mr. Chapman has often expressed feelings of remorse and contrition for his ill-considered conduct. He has completed many treatment and self-help programs, and has come a long way in becoming a productive and valuable member of society. Mr. Chapman's many accomplishments include: Enrolling in GED classes; Victim Impact Panel Group; Ace Orientation; Film/Fine Arts; Radio SMU Parenting; SMU Radio Nutrition; SMU Radio Memory; Life-long Wellness; Ace Keyboarding; RRP Health; Healthy Minds & Bodies; and many more. (*Exhibit 2*); *see Hall v. United States*, No. 2:93-cr-162(1), 2020 U.S. Dist. LEXIS 121742, at *20 (E.D. Vir. Mar. 2, 2020) (observing that defendant was a violent drug dealer in 1994, but "based on the re-evaluation of the §3553(a) factors, evidence of Petitioner's post-rehabilitation, and the purpose of the First Step Act," the Court exercised its discretion to grant relief).

Mr. Chapman has maintained steady employment while incarcerated, and consistently receives good work evaluations for the performance of his duties. Not a day goes by that Mr. Chapman is not studying business, politics, and other educational undertakings so that he is well prepared should he be provided an opportunity to be free from prison. Mr. Chapman has done all that he can to change his life, and his time in prison has helped to forge the tools necessary to be a productive member of society.

8

During his many years in prison, Mr. Chapman has maintained clear conduct, receiving only a few institutional write ups. He has completed payment of his court ordered financial obligation, and maintains a good rapport with staff and inmates. Mr. Chapman is working towards his GED, and uses his "free time" meaningfully, including facilitating stress management and favorable peer affiliations.

Further, it cannot be cast aside as trivial that Mr. Chapman's accomplishments and rehabilitative efforts were all undertaken on Mr. Chapman's own account, despite his not having any change of release because of his Life sentence. Recently, the Supreme Court said that individuals to seek rehabilitative efforts with essentially nothing to gain, should be given weighty consideration. *See Gall v. United States*, 552 U.S. 38, 59 (2007) (holding that it is appropriate to give "great weight" to a defendant's "self-motivated rehabilitation," which "lends strong support to the conclusion" that the defendant may not need correction to deter future crimes); *accord Snipes v. United States*, 2015 U.S. Dist. LEXIS 63056 (E.D. Tenn. 2015) (citing Pepper and acknowledging that defendant's rehabilitative efforts were demonstrated by his exemplary conduct while in prison "even while facing a life term of confinement"); *United States v. Mansoori*, 426 F. Supp. 3d 511, 519 (N.D. Ill. 2019) (granting relief under the First Step Act and noting that "[w]ithout any expectation that he would be freed from custody, Mansoori consistently took efforts to better himself and remain productive").

All of Mr. Chapman' accomplishments are a testament to his will to change, especially in light of his disadvantaged youth and tumultuous upbringing. For instance, at a very young age, Mr. Chapman was thrust into an environment without a father to give

direction. To make matters worse, Mr. Chapman's mother, Constance Benton, was a heroin addict, who was frequently in prison during most of Mr. Chapman's youthful and impressionable years.

Because of his mother's struggles, Mr. Chapman was reared by his grandmother, Constance Crum, who, as facts confirm, was herself a frequent drug abuser, which left very little, if any, positive influence on Mr. Chapman. In fact, Ms. Crum's sons, John and Floyd Benton, also lived in the home, and both were drug abusers and, more often than not, drug dealers. Violence at home, and in the neighborhood, was rampant and all consuming. As a child, Mr. Chapman stood no chance of rising above his circumstances, which cannot be trivialized; it made the difference, and Mr. Chapman's poor decision making was a direct consequence of the perpetual crime and violence that plagued his young life – something that a child should never have to endure.

It is undisputed that Mr. Chapman committed crimes for which considerable punishment was appropriate. But Mr. Chapman's age at the time of the offense (17-yrs old) should be given great weight. Age, like any other personal characteristic of the defendant, is a permissible "mitigating factor" for the court to consider when imposing a sentence that is "sufficient, but not greater than necessary" to achieve the desired goals of sentencing. *See Gall v. United States*; 169 L.Ed 2d 445, 461-62 (2007); *see also* 18 U.S.C. §3553(a); USSG §1B1.10 cmt. n.1(B)(i). And just recently, the Supreme Court reaffirmed the principle that "incorrigibility is inconsistent with youth." *Miller v. Alabama*, 132 S. Ct. 2455, 2465 (2012) (citation and quotations omitted). In other words, "[i]mmaturity at the time of the offense is not an inconsequential consideration." *Gall*, 169 L.Ed 2d at 462. *See also United States v.*

10

*Maumau*, No. 2:08-cr-00758-TC-11, 2020 U.S. Dist. LEXIS 28392, at *17 (D. Utah Feb. 18, 2020) (holding that age, change in law, and length of sentence are an appropriate considerations when deciding a *First Step Act* motion).

Like the defendant in *Gall*, Mr. Chapman was 17-years old at the time that his offense conduct began in 1996. His lack of maturity and an undeveloped sense of responsibility was a driving force in his then "impetuous and ill-considered actions." *Id.* The early influences of Mr. Chapman's life, including drugs and crime, made him particularly vulnerable to negative influences. Cf. *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) ("Youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and psychological damage"); *Gall*, at 462 ("Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five"). Mr. Chapman does not suggest that his age and relative youth at the time of the offense should excuse his behavior. It does not. Mr. Chapman only asks the Court to consider his age at the time of the offense to better understand his then impetuous behavior. *See Roper v. Simmons*, 543 U.S. 551, 570 (2005) ("[T]he signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside") (citation and quotations omitted).

Given the dramatic contrast between Mr. Chapman's behavior at the time of the offense, and his post-incarceration conduct, it would not be unreasonable for the Court to view Mr. Chapman's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he has matured and will not engage in the type of ill-considered conduct in the future that resulted in his conviction. *See United States v. Salina-Cortez*, 660

F.3d 695, 698 (3d Cir. 2011) ("It is only by ensuring that the individual circumstances of the defendant are not obliterated by the offense that an individual's potential to successfully rejoin society is maximized and the interests of the public safety advanced"). Moreover, the Supreme Court recently held that the Constitution requires that a reviewing Court provide Mr. Chapman with "the opportunity to show that his crimes did not reflect irreparable corruption." *Montgomery v. Louisiana*, 136 S.Ct. 718, 736 (2016); *see also Cruz v. United States*, 2018 U.S. Dist. LEXIS 52924 (D. Conn. 2018) (holding that the imposition of a mandatory life sentence of an 18-year old convicted of murder – since *Miller* – is unconstitutional).

It is also significant that the Fourth Circuit recently championed a district court's decision to grant compassionate relief under the *First Step Act*, but not for illness, but because of the defendants' "youth at the time of the offense[], ... their exemplary behavior and rehabilitation in prison, and their already-substantial years of incarceration." *United States v. McCoy*, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020); *see also id* at *9 (holding that district court's are "'empowered...to consider *any* extraordinary and compelling reason for release that a defendant might raise'") (citation omitted).

It is clear that Mr. Chapman is not the man that he was when he entered prison so very many years ago. He is dedicated, respectful of the law, driven, talented, and now, with the Court's indulgence, hopeful. *See Pepper*, 562 U.S. at 491 ('In assessing ... deterrence, protection of the public and rehabilitation ... there would seem to be no better evidence than a defendant's post-incarceration conduct"). If anyone deserves another chance to live freely among his family and friends, and to be a productive member of society, it is Mr. Chapman. The Court should exercise its discretion and reduce Mr. Chapman's sentence.

**Current Policy Statement Conflicts with the *First Step Act***

Section 3582(c)(1)(A)(i) allows district judges to reduce sentences for "extraordinary and compelling reasons." Judges may lower such sentences in that situation "after considering the factors set forth in 3553(a) to the extent they are applicable," if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission. *See Julius Brown v. USA*, ELH-00-100, at *11 (D. Md. December 17, 2020) ("In resolving a compassionate release motion, a court must also consider the factors in 18 U.S.C. § 3553(a)"). The applicable policy statement issued by the Sentencing Commission relating to motions for relief filed under 3582(c)(1)(A)(i) is 1B1.13.[4]

The current policy statement, however, is old and out-dated, and does not reflect the current changes to 3582(c)(1)(A)(i) as promulgated by the First Step Act. *See Cantu-Rivera*, 2019 U.S. Dist. LEXIS 105271 at *1; *United States v. Beck*, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *United States v. Fox*, 2019 U.S. Dist. LEXIS 115388, at *5-6 (D. Me. July 11, 2019). "[D]eference to the BOP no longer makes sense now that the *First Step Act* has reduced the BOP's role. The Commission has not revised its policy statement to reflect this *First Step Act* change and is unlikely to do so soon, since it lacks a quorum of members." *Fox*, 2019 U.S. Dist. LEXIS 115388, at *7 (italics added). This court is therefore free to determine the contours of the "other reasons" language delineated under §1B1.13(D).

**Consideration of the 18 U.S.C. 3553(a) Factors, Disparity in Sentencing, and New Changes in the Law**

---

[4] It should also be noted that courts have held that this policy statement is not binding following *Booker v. United States*, 543 U.S. 220 (2005), and thus a district court is only required to consult it for guidance. *See United States v. Fox*, 2019 U.S. Dist. LEXIS 115388, at *4-5 (D. Me. July 11, 2019) (policy statement "does not constrain the Court's independent assessment"); *United States v. Dimasi*, 220 F. Supp. 3d 173, 192 n.13 (D. Mass 2016).

A court must consider the factors set forth in 18 U.S.C. 3553(a) when reducing a sentence; indeed, nothing in the *First Step Act* of §3582(c) nullified the mandate in §3553(a) that "[t]he court, in determining the particular sentence to be imposed, shall consider" the §3553(a) factors. 18 U.S.C. §3553(a); *United States v. Lewis*, 2019 U.S. Dist. LEXIS 85361 (D.N.M. Apr. 30, 2019) ("The Court concludes that, although the *First Step Act* does not require a full resentencing with the defendant present, the *First Step Act* permits a court to consider 18 U.S.C. §3553(a) factors in determining whether a *First Step Act*-eligible defendant's circumstances warrant a sentence reduction, and to what extent the court should reduce his or her sentence").

**Disparity in Sentencing**

One of the major requirements of §3553(a) is to examine the history and "characteristics" of the defendant, *United States v. Clay*, 787 F.3d 328, 330-31 (5th Cir. 2015), as well as the need to *avoid unwarranted sentencing disparity*, *United States v. Allen*, 2019 U.S. Dist. LEXIS 70739 (D. Conn. Apr. 26, 2019) ("Any potential disparity can be considered in deciding whether to grant a sentence reduction under the *First Step Act*"). Here, Mr. Chapman argues that sentencing for the crimes charged against him in 1996, are disparate when compared to sentencing now. In 1998, Mr. Chapman received a life sentence for his crimes, including murder. Since then, and until 2019, the average sentence for murder was 190 months, and the national average in 2018, 291 months. *See United States v. Redd*, 97-cr-006, 2020 U.S. Dist. LEXIS 45977, at *9, n.20 (E.D. Va. March 16, 2020) (according to statistics released by the U.S. Sentencing commission; in FY 1997, the average sentence imposed for murder was 190 months, and for FY 2018, the national average was 291

14

months). Moreover, the average sentence for murder in year 2018 represented a slightly higher number, as average sentences for murder in FY 2017 was 224 months, and in FY 2019, 255 months.

The Court in *United States v. Vigneau*, No. 97-cr-33-JJM-LDA, 2020 U.S. Dist. LEXIS 129768, at *1, 13 (D.R.I. July 21, 2020), expressed a similar willingness to consider disparity in sentencing when deciding a *First Step Act* motion, explaining that the national average sentence for distribution of marijuana is significantly lower than the 365 month sentence that Mr. Vigneau received in 1998 for operating a continuing criminal enterprise. The Court further noted, as applicable here, that the median length of sentences imposed in 2019 for murder was "twenty years." *Id.* at *13 (citing statistical analysis).[5]

More recently, in *United States v. Antoine*, PWG-19-140 (D. Md. 2020), the defendant was involved in a drug trafficking organization in Baltimore, and confessed to the intentional shooting and killing of an individual in relation to the drug conspiracy. *See id.*, ECF 349 at 9-10. Pursuant to a plea agreement, Antoine entered a plea of guilty to one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during and in relation to a drug trafficking crime. *Id.* Although Antoine was the shooter, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government agreed to a term of imprisonment ranging between 20 and 25 years. *Id.* at 6.

---

[5] Judge Blake recently reached a similar conclusion, ruling that Mr. Brown's "sentence of life plus 30 years appears significantly longer than at least some federal sentences imposed more recently for drug offenses involving murder." *Julius Brown v. USA*, ELH-00-100, at *29, citing *United States v. Bryant*, 95-202-CCB-3, 2020 WL 2085471, at *5 n.8 (D. Md. Apr. 30, 2020) ("According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months").

Thus, Mr. Chapman's multiple life sentences stand in stark contrast with other similarly situated defendants. He was given almost ten-times the national average sentence for murder in 1998. *See United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. 2019) ("The principle set forth in *Pepper* and §3661 requires that the district court be able to consider the *most recent evidence* of a defendant's life and characteristics, which may be the most probative information available, when deciding whether a defendant should continue to be incarcerated or, in some cases, be immediately released") (italics added).

**New Changes in the Law**

Under the *First Step Act*, courts have considered new changes in the law as a basis for granting relief from judgment. *See United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020); *United States v. Baker*, No. 10-20513, 2020 U.S. Dist. LEXIS 145670, at *8-9 (E.D. Mich. Aug. 13, 2020) (noting that a "change in law" and evidence of "rehabilitation" can be considered in "the context of a motion for compassionate release"). The Court in *Baker* expressly rejected the Government's argument that a "change in law does not constitute an extraordinary" circumstances, and found that "the combination of Baker's remarkable record of rehabilitation, his relative youth at the time of his offense, the length of his sentence, and the disparity between his sentence and those sentenced for similar crimes after the *First Step Act* create an extraordinary and compelling basis for relief." *Id.* at *8, 10. Accord *United States v. Urkevich*, No. 8:03CR37, 2019 U.S. Dist. LEXIS 197408, at *2 (D. Neb. Nov. 14, 2019) (granting *First Step Act* relief citing change in law as a basis).

Along these lines, other courts have come to similar conclusions, and noting that "one of the express purposes of the First Step Act was to 'increas[e] the use and transparency

16

of compassionate release.'" *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 U.S. Dist. LEXIS 28392, at *9 (D. Utah Feb. 18, 2020). "Congress indicated thirty-five years ago that it would be appropriate to provide compassionate releases when sentences are 'unusually long.'" *Id.* at *13-14.[6] Accord *Vigneau*, supra, 2020 U.S. Dist. LEXIS 129768, at *11 (observing that an exceedingly long sentence can "support an 'extraordinary and compelling' reason to reduce a sentence" under the *First Step Act*). "[C]hanges in the sentencing law landscape are relevant to the Court's analysis of whether the Court's sentence appropriately addresses 'the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public.'" *United States v. Johnson*, No. RDB-07-0153, ECF No. 183 at 10-11 (D. Md. Oct. 14, 2020); *see also McCoy*, 2020 WL 7050097, at *11.

In this case, the *Apprendi* and *Alleyne* line of cases have altered the legal landscape of how sentencing and sentencing issues are determined, and under what burden of proof, and requisite notice that must be provided to a defendant. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013). A determination of quantity, nor a notice of intent to seek enhanced penalties was charged in the indictment in this matter. But as courts have ruled since *Apprendi*, failure to charge drug quantity in the indictment and prove it to a jury is plain error because the enhanced penalty increases a defendant's sentence above the statutorily prescribed maximum penalty. *United States v. Promise*, 255 F.3d 150,

---

[6] This line of reasoning from the Court was in direct response to the Government's argument that compassionate release is generally reserved for those "suffering" from medical-or-age-related physical limitations. *Id.* at *12.

156-57 & n.6 (4th Cir. 2001) (en banc); *United States v. Thomas*, 274 F.3d 655, 663 (2d Cir. 2001).

In the federal system, "defining crimes and fixing penalties are legislative, not judicial, functions." *United States v. Evans*, 333 U.S. 483, 486 (1948). "'If in fact the legislature has circumscribed the judge's discretion by specifying a mandatory minimum sentence, fundamental fairness requires that the defendant be so informed.'" *United States v. Wheeler*, 886 F.3d 415, 430 (4th Cir. 2018) (citation omitted). Therefore, consistent with the "constitutional principle of separation of powers," a defendant has a "constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress," *Whalen v. United States*, 445 U.S. 684, 689-90 (1980), and an "increase in the congressionally mandated sentencing floor implicates separation of powers principles and due process rights fundamental to our justice system." *Wheeler*, at 430. The defect is fundamental because it "wrongly prevent[s] [the sentencing court] from exercising the proper range of [its] sentencing discretion." *Lester v. Flournoy*, 909 F.3d 708, 713 (4th Cir. 2018). *Braswell v. Smith*, 952 F.3d 441, 450 (4th Cir. 2020).

Thus, consistent with the Fourth Circuit's pronouncement in *Wheeler*, because Mr. Hill's mandatory minimum sentence was erroneously increased, under a then mandatory sentencing regime, his sentence "presents an error sufficiently grave to be deemed a fundamental defect." 886 F.3d at 433; *see also Braswell v. Smith*, 952 F.3d 441, 451 (4th Cir. 2020) (acknowledging that "an increase in the mandatory minimum sentence" is a "fundamental defect resulting in a miscarriage of justice").

**No Danger to Others**

Mr. Chapman does not present a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Who he was as a teenager, and in his early twenties, does not represent the man that he is today. Mr. Chapman has used his time extremely well, and has worked to better himself so that he might be a valuable and productive member of society. *See Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011) ("In assessing... deterrence, protection of the public and rehabilitation... there would seem to be no better evidence than a defendant's post-incarceration conduct"); *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (same).

Today Mr. Chapman stands before the Court a humble and broken man. He is deeply remorseful for his past conduct, and not a day goes by that he does not regret the harm that his poor decisions have caused to others. Mr. Chapman cannot change the past. That, unfortunately, is a haunting reminder of his failure to himself, his family, and his country. He has been appropriately branded a criminal, and he well deserves the stigma. But for his crimes, Mr. Chapman has been aptly punished. He has languished in prison for over 24 calendar years.

Nearly a quarter of a century in prison is an extraordinarily harsh punishment; that is undeniable. But in this case, it has served its purpose – punishment, correction, rehabilitation, and deterrence. Mr. Chapman is no longer the foolish young man who walked into prison over 24 years ago. *See Roper v. Simmons*, 543 U.S. 551, 570 (2005) ("[T]he signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside") (citation and quotations omitted). Mr.

Chapman has demonstrably dedicated his life to change and to helping others, and has reinvented himself in a way that is both conspicuous and laudable. He has made his family proud, and all of the empirical evidence suggests that he would be a productive, valued member of society. *See United States v. Salina-Cortez*, 660 f.3d 695, 698 (3d Cir. 2011) ("It is only by ensuring that the individual circumstances of the defendant are not obliterated by the offense that an individual's potential to successfully rejoin society is maximized and the interests of the public safety advanced").

## CONCLUSION

For all of the foregoing reasons, Mr. Chapman humbly requests this Court reduce his sentence and release him from prison pursuant to 18 U.S.C. §3582(c)(1)(A)(i), and section 603(b) of the *First Step Act*, or any other provision the Court deems appropriate.

Respectfully submitted,

*[signature]*

Allen Chapman #00735-748
USP Canaan
Federal Correctional Institution
P.O. Box 30
Pinellas Park, FL 33781

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of December, 2020, a copy of the foregoing Motion for Relief from Judgment, was mailed to the Office of the U.S. Attorney, 36 S. Charles Street, Baltimore, MD 21201.

*[signature]*
ALAN CHAPMAN