IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA  *

   v.                                      *

                                             Criminal No.: GLR-96-458

ALLEN CHAPMAN           *

  *    *    *    *    *    *    *    *    *    *    *

## REPLY BRIEF IN SUPPORT OF COMPASSIONATE RELEASE

Allen Chapman, through his attorney, C. Justin Brown, Brown Law, hereby replies to the Government's opposition to his motion for compassionate release. This brief rebuts three issues raised by the Government and argues the following: (1) that there exists widespread acceptance that compassionate release extends beyond the circumstances set forth in *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020); (2) that Chapman's youth at the time of the offense is an important factor for this Court to consider; and (3) that despite the Government's claims, there exists disparity in this case and this Court is in a unique position to correct it.

    **I.**      **Compassionate Release extends well beyond the facts of *McCoy*.**

The Government argues strenuously – and stubbornly – that "any court that adopts *McCoy* should limit its application to the narrow circumstances it presented – specifically an extraordinarily long sentence resulting from numerous 'stacked' § 924(c) convictions that could not have occurred after the First Step Act." ECF 1293 at 17.

But the Government is missing the big picture. While it is true that *McCoy* was a case involving stacked § 924(c) counts, it is also true that *McCoy* opened the door to an

entirely new area of sentencing relief in the federal system – an area that lies squarely within the domain of federal judges. *McCoy* states this explicitly: "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (emphasis in original).

The practice that has emerged – in this district and beyond – is that courts look at the particular circumstances of a sentence and make an individualized assessment as to whether there exist extraordinary and compelling circumstances. This policy takes into account that individual defendants and the circumstances of their cases do not fall neatly into cookie-cutter shapes, and the Court must use its discretion in fashioning equitable relief. Chapman has cited numerous non-§ 924(c) cases in his opening brief and this Court is well aware of the many precedents that have shaped compassionate-release practice in Maryland. Compassionate release has become a critical and valuable vehicle that allows courts to correct some of the more unjust sentences that have been imposed in years past.

It is also worth pointing out that the grounds for relief sought by Chapman are not appearing out of thin air. Each of Chapman's claims is rooted in precedent from this district and others. This is not a case in which Chapman is attempting to make new law.

Chapman seeks compassionate release based upon (1) his youth at the time of sentencing; (2) the harshness of the life sentence he received; and (3) the disparity between his sentence and those received by his co-defendants. Each of these issues is supported by precedent (cited in Chapman's opening brief), and the Court is well within its powers to grant relief on any of these grounds. The Government's argument that

compassionate relief should be limited to only cases of stacked § 924(c) counts is just not consistent with either precedent or practice.

Rather, this Court should make good use of its new authority under 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate release statute, and reduce Chapman's sentence in an equitable manner.

## II. Chapman's youth is a factor that this Court should consider.

The Government also attempts to convince the Court to dismiss Chapman's age and circumstances at the time of the offense, suggesting that Chapman has not outgrown "any immaturity issues related to his youth." ECF Doc. 1293 at 14. This is based on the fact that Chapman has committed some infractions over the past 25 years of imprisonment at some of the country's most dangerous penitentiaries.

First, the Government fails to note that most of the infractions of concern it cited – "fighting, assault, lying, possessing a dangerous weapon, and threatening bodily harm," ECF 1293 at 14 – occurred more than 11 years ago. *See* ECF 1284-16 (Chapman's Disciplinary Record) (reflecting that the hearing for the fighting infraction occurred in 2007; for the assault, in 2008; for the lying, in 2008; and for possessing a dangerous weapon, in 2010). But disciplinary infractions that occurred so long ago do not reflect Chapman's character today.

The only more recent infraction that might suggest even a hint of violence is the 2015 infraction for allegedly threatening bodily harm. However, as Chapman explained in his opening brief, this three-word description of the incident is far more nefarious than what actually occurred. *See* ECF 1284 at 30. In reality, there was some classroom

disagreement between Chapman and the instructor, and Chapman's comments were grossly (and unfairly) exaggerated and taken out of context. *See* Ex. 1 (2015 Incident Report). Chapman denied making the alleged "threatening" comment, and three witnesses came forward in his defense and provided written statements on his behalf. *Id.* But even if Chapman actually said what the teacher alleged, there was nothing in that statement that threatened bodily harm. That the teacher perceived it as a threat should not be enough to attribute violent or malicious intentions to Chapman. This a perfect illustration of the danger and injustice of reducing a complex event or incident to a single descriptive – and misleading – sentence.

The Government's claim that Chapman has not matured simply because he has not been perfect in the past 25 years is a myopic way of looking at the life arc of a human being. As Chapman laid out in excruciating detail in his Motion, he came from a background of depravation and indifference. He made a mistake at the age of 20 that caused him to receive a mandatory life sentence. He took the life of another man, an act that he thinks about and regrets every day. Since the time of his imprisonment, however, he has done his best to improve and mature into a man. His accomplishments are real. He has completed programs in the Bureau of Prisons; he has remained connected to his family and has served a meaningful role in the life of his daughter; he has found some peace as a man devoted to his religion. While perhaps he has not been perfect, he has exhibited extraordinary resilience and tenacity. To say that he has not outgrown his youthful immaturity in the past 25 years is both unfair and untrue.

The Government's conclusion also ignores the science. Chapman's brain was not fully developed at the time when he committed the crime. He was susceptible to impulsive behavior and peer pressure. This a fact recognized by the Supreme Court in *Roper v. Simmons*, 543 U.S. 551 (2005), and its progeny. It is also a fact that every court should consider when imposing a sentence. Unfortunately, because of the mandatory sentence sought by the Government when Chapman was charged, the original sentencing judge was unable to do so. Now, because of the evolution of compassionate release, the Court may consider Chapman's youth. And the Court may also conclude that Chapman deserves a second chance.

### III.     Real disparity exists in how co-defendants were sentenced.

The Government also contends – incorrectly – that there is no unfair disparity between Chapman's sentence and the sentences received by some of his co-defendants. Again, the Government is missing the big picture. Chapman and co-defendant Warren Hill both committed a single murder, at a very young age, and under the influence of older, more experienced men. They both received life sentences. Other defendants in the same case committed and planned murders as well – in some cases, more than just a single murder – but did not receive life sentences. This is the essence of this claim. While the Government suggests that Chapman's life sentence is appropriate in light of the "relative culpability" of the numerous defendants in this case, ECF 1293 at 15, the Government fails to explain how Chapman was more culpable than his codefendant,

Mark Coles, who pleaded guilty and received a 235-month sentence (less than the 25 years that Chapman has already served).[1]

It is the gulf between a life sentence and a term of years that makes Chapman's sentence unjust. While other defendants received significant sentences defined by terms of years, those sentences pale in comparison to a life sentence. With a life sentence, a defendant has very little incentive to improve himself and conform to the norms of society. He is resigned to the highest security facilities with the fewest options for programming. These prisons are often dangerous, and abuse at the hands of prison guards is not uncommon. To the man serving the life sentence, there is no light at the end of the tunnel; there is only darkness. It is hard to fathom what effect this had on 20-year-old Allen Chapman when he entered the prison system.

A term of years, however is starkly different. It allows an inmate to envision freedom and to prepare for a transition to life on the outside. It provides an incentive to endure the harsh conditions and insults of prison life. It offers shared hope – between a father and a daughter – of one day reuniting.

While Chapman's motion seeks time served – he has already been in prison for approximately 25 years – the most critical thing that this Court can do is to impose a sentence of years. By doing so, the Court would put Chapman at least partially in line

---

[1] In fact, in addition to being involved in the instant murder with Chapman and Hill, Coles also admitted to murdering DeShane Carter. While his sentence was the result of a cooperation agreement, this is insufficient to justify such a severe disparity.

with the other defendants in the case, and eliminate the disparity between those who received life sentences and those who did not.

The Government also argues that there is no disparity in this case because even today, some defendants are still charged with murder in aid of racketeering. But the proper inquiry is whether Chapman would *likely* receive the same sentence today; not whether he can prove, with absolute certainty, that he would not. *See*, *United States v. Kratsas,* Crim. No. DKC-92-208, 2021 WL 242501, at *4 (D. Md. Jan. 25, 2021) (granting compassionate release because "the sentence today likely would be less, perhaps much less" even though "his life sentence **could** still be imposed"); *Babb v. United States*, Crim. No. ELH04-190, 2021 WL 2315459, at *18 (D. Md. June 4, 2021) ("If Babb were prosecuted today, it is quite likely that he would receive a sentence well below the one he received in 2007."); *United States v. King*, Crim. No. TDC-05-203, slip op. at 6-7 (D. Md. May 24, 2021) ("[U]nder present practice in this District, the addition of 13 § 924(c) counts on a single defendant in a single prosecution would almost certainly not occur, so the Court rejects the Government's approach."), ECF No. 190.

The Government cites a handful of cases in which it charged murder in aid of racketeering during the last five years (dating back to 2016). *See* ECF 1293 at 15. The small number of cases identified by the Government, compared with the large number of racketeering-related murders in Maryland, supports Chapman's argument that it is *unlikely* that he would face this charge – and thus, a mandatory life sentence – today. *See Sappleton*, 2021 WL 598232, at *3 (finding it unlikely that a defendant would face a mandatory life sentence today because such a sentence was sought only five times in

7

2016, although a much larger number of crimes were eligible); *see also United States v. Brown*, Crim. No. 2:09-CR-14-1, 2021 WL 2383011, at *2 (N.D.W.Va. June 9, 2021) (finding a sentence disparity even though one contemporary defendant had received a longer sentence).

## IV. CONCLUSION

There exist extraordinary and compelling reasons to grant compassionate release. Allen Chapman respectfully requests that this Court reduce his sentence to time served.

Respectfully submitted,

_____/s/_____
C. Justin Brown
BROWN LAW
1 N. Charles St., Suite 1301
Baltimore, MD 21201
Tel: 410-244-5444
Email: brown@cjbrownlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, a copy of this Reply was served on all parties via CM/ECF.

_____/s/_____
C. Justin Brown